```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF TEXAS
                       HOUSTON DIVISION
```

| | | |
|---|---|---|
| SOLGAS ENERGY LTD., | § | |
| | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | MISC. ACTION NO. H-09-368 |
| | § | |
| THE FEDERAL GOVERNMENT | § | |
| OF NIGERIA, | § | |
| | § | |
|     Defendant, | § | |
| | § | |
| THE CENTRAL BANK OF NIGERIA, | § | |
| | § | |
|     Intervenor, | § | |
| | § | |
| JP MORGAN CHASE BANK, N.A., | § | |
| | § | |
|     Garnishee. | § | |

## ORDER

On Wednesday, July 14, 2010, the court[1] heard arguments of the parties on Plaintiff's Second Motion to Compel (Docket Entry No. 65) and Plaintiff's Third Motion to Compel (Docket Entry No. 67). The court **GRANTS IN PART AND DENIES IN PART** Plaintiff's Second Motion to Compel and **GRANTS** Plaintiff's Third Motion to Compel the motions as explained below.

### I. Case Background

The dispute between Plaintiff and the Central Bank of Nigeria ("CBN") emanates from the court's Order for Issuance of Second Writ

---

    [1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  Docket Entry No. 29.

of Garnishment signed in August 2009.[2]

In that order, the court "command[ed] JP Morgan Chase Bank, N.A., [("Chase"),] as garnishee, to appear as required by law[] and answer on oath what, if anything, the garnishee is indebted to the Federal Government of Nigeria [("FGN")], and/or its agencies or instrumentalities," including CBN, what effects Chase possessed at the time the writ was served and at the time of the order, and what other persons, within Chase's knowledge, were indebted to FGN.[3] The court furthered ordered Chase to not to pay FGN or any agency or instrumentality, including CBN "any debt or to deliver any effects, pending further order of this Court, without retaining property of [FGN] and/or its agencies or instrumentalities, including . . . [CBN], in an amount sufficient to satisfy and equal the maximum value of property or indebtedness that may be garnished" ($15,170,578).[4] In other words, the court ordered Chase to report the total amount in which it was indebted to FGN, CBN, and any other agency or instrumentality of FGN and to retain an amount equal to $15,170,578 pending further order of the court.[5]

In September 2009, Chase answered the writ and asseverated that it was "indebted to [CBN] in the sum ordered of FIFTEEN

---

[2]   See Docket Entry No. 7.

[3]   Id. at p. 2.

[4]   Id. at pp. 2-3

[5]   See id. at pp. 2-3.

MILLION, ONE HUNDRED-SEVENTY THOUSAND, FIVE HUNDRED SEVENTY-EIGHT AND NO/100 DOLLARS."[6] Chase represented that it would hold that entire sum pending the disposition of this case.[7] In other words, Chase answered that it was indebted to CBN in the exact amount of the maximum value of property that could be garnished and agreed to retain that amount.[8] Chase did not indicate whether it held the funds in one or multiple accounts.[9]

Chase's response did not comply fully with the court's order. Rather than reveal what (i.e., the total amount) it was indebted to CBN; it simply affirmed that it was indebted to CBN in the maximum amount to be garnished. In fact, its affirmative statement indicates that it was indebted to CBN in exactly that amount and no more. Chase perpetuated the misinformation when, in response to an interrogatory propounded in September 2009, Chase again refused to identify all accounts maintained by it for CBN, objecting to the request as "irrelevan[t] since Chase is holding all funds commanded by the Court."[10]

In February 2010, this court issued a Memorandum,

---

[6]   Chase's Original Answer to Second Writ of Garnishment, Docket Entry No. 13, p. 2.

[7]   Id.

[8]   See id.

[9]   See id. at pp. 1-2.

[10]   Chase's Response to Plaintiff's Third Motion to Compel, Docket Entry No. 72, Ex. 2, Chase's Response's to Plaintiff's Discovery Requests, p. 2, Answer to Interrog. 1.

Recommendation, and Order that was adopted on April 2, 2010.[11] As the parties remain somewhat confused on the issues in this case, a review of the court's holdings in those opinions appears to be necessary at this time.

As an initial matter, the court addressed Plaintiff and CBN's motions to strike evidence submitted by the other.[12] The only evidentiary ruling among several made by the court that has significance at this time is the court's decision not to strike the declaration supporting CBN's motion to vacate. The court found the declaration of Muhammad Nda ("Nda"), CBN's director of foreign operations, to be less than helpful in determining the ownership and use of the funds, but decided that, rather than strike it from the record, the court would factor the declaration's diminished credibility into its ultimate factual determinations.[13]

Moving to the substantive issues, the court found that it has personal jurisdiction over Garnishee and in rem jurisdiction over the bank funds regardless of where the accounts in which they are held are maintained.[14] With regard to the application of the

---

[11] See Memorandum, Recommendation, and Order, Docket Entry No. 35; Order dated Apr. 2, 2010, Docket Entry No. 44.

[12] See Memorandum, Recommendation, and Order, Docket Entry No. 35, pp. 4-11.

[13] Id. at pp. 4-5.

[14] See id. at pp. 11-14 (providing a thorough analysis of this issue).

4

Foreign Sovereign Immunities Act ("FSIA"),[15] the court explained that the statute affords two separate grants of immunity: immunity from jurisdiction and immunity from attachment and execution of property.[16] This case deals with the garnishment of funds in aid of execution of a judgment and, therefore, requires analysis solely pursuant to the latter type of immunity.

As explained in the court's memorandum, property in the United States belonging to the FGN that is used for commercial activities in the United States is subject to attachment in aid of execution on the judgment entered by the United States District Court for the District of Columbia based on the order confirming the international arbitral award.[17] See 28 U.S.C. § 1610(a)(6). The first pertinent aspect of this exception to immunity from attachment is ownership of the property.[18] Despite the CBN's nominal ownership of the funds on deposit with Chase, Texas law allows Plaintiff to challenge the true ownership of the account(s) and places the responsibility of making the ownership determination on the court.[19]

---

[15] 28 U.S.C. §§ 1602-1611.

[16] See Memorandum, Recommendation, and Order, Docket Entry No. 35, pp. 14-17.

[17] See id. at p. 15.

[18] See id. at p. 19.

[19] See id.

It is unquestioned that Plaintiff cannot garnish CBN's funds.[20] Thus, CBN can succeed in overcoming the writ of garnishment by proving that the funds belong solely to it. However, upon review of CBN's motion to vacate the writ, the court determined that Plaintiff had submitted sufficient evidence to call into question the identity of the true owner of funds held by Chase in CBN's name.[21] Although sufficient to raise a question of fact, the evidence presented in opposition to CBN's motion to vacate was not enough to allow the court to make a determination on ownership.[22]

Because CBN failed to prove true ownership of the funds on deposit with Chase, the court moved to the other pertinent aspect of the foreign-sovereign-immunity analysis as it relates to the attachment of property, an aspect that only comes into play if Plaintiff succeeds in demonstrating that the funds belong to FGN.[23] This second part of the analysis concerns the use of the funds to be garnished.[24]

As stated above, the use of the funds must be for commercial

---

[20] Plaintiff does not challenge CBN's status as an instrumentality of FGN or the absence of a judgment against CBN. These two facts, however, are not relevant to the analysis because: 1) the correct analysis is pursuant to the exceptions to immunity from attachment, not to the jurisdictional immunity provisions; and 2) Plaintiff is not seeking to attach CBN's funds but, rather, funds in CBN's name that actually belong to FGN, the judgment debtor.

[21] See Memorandum, Recommendation, and Order, Docket Entry No. 35, p. 20.

[22] See id.

[23] See id. at pp. 22-28.

[24] See id.

activity in the United States to overcome immunity from attachment. Neither the source of the funds nor the purpose of the expenditure matters in assessing the commercial nature of the use.[25] See Conn. Bank of Commerce v. Congo, 309 F.3d 240, 253 (5th Cir. 2002); Liberian E. Timber Corp. v. Gov't of the Rep. of Liber., 659 F. Supp. 606, 609 (D.D.C. 1987)(quoting H.R. Rep. No. 94-1487, at 16, reprinted in 1976 U.S.C.C.A.N. 6604, 6615). Notwithstanding the commercial-activity requirement, the statute contains a provision that prohibits the attachment of FGN's funds that are property of CBN "held for its own account."[26] See 28 U.S.C. § 1611(b)(1). Legislative history of this provision explains that "own account" means "central banking activities."[27] H.R. Rep. No. 94-1487, at 31, reprinted in 1976 U.S.C.C.A.N. 6604, 6630.

Clearly, then, the use question has two overlapping facets. On the one hand, funds used for commercial activity in the United States are excepted from immunity; on the other, immunity is absolute with regard to funds that have been held or used for central banking activities, even if commercial in nature.[28]

---

[25] Id. at p. 27.

[26] See id. at p. 16.

[27] Id. at pp. 22, 26.

[28] See Memorandum, Recommendation, and Order, Docket Entry No. 35, pp. 22-28. At least one court noted that the central banking activities may have a commercial character, as long as those activities are part of general banking and agency services for the foreign government. See Weston Compagnie de Finance et D'Investissement, S.A. v. La Republica del Ecuador, 823 F. Supp. 1106, 1113 (S.D. N.Y. 1993)(quoting Ernest T. Patrikis, Foreign Central Bank Property: Immunity from Attachment in the United States, 1982 U. Ill. L. Rev. 265, 277 (1982)).

It is incumbent upon the court to decide the factual issues regarding the funds' uses and to reach a legal conclusion. See <u>Af-Cap Inc. v. Congo</u>, 383 F.3d 361, 368 (5th Cir. 2004)("Determining whether property is used for commercial purposes requires a court to both make factual findings concerning how the property was used and to reach legal conclusions concerning whether that particular use was 'for commercial purposes.'"). In its prior memorandum, the court found that Plaintiff presented evidence on use that controverted Nda's affidavit but that the court lacked sufficient evidence to make a factual finding on that point.[29]

The court stated, "The consequence of lacking sufficient evidence from either party is that the court is unable to answer the question whether the funds are immune from garnishment. In order to resolve the issue, then, the court needs additional evidence from the parties, evidence that Plaintiff can obtain only through discovery."[30] Following an extensive discussion of case law on the issue of whether to allow discovery on funds held nominally by CBN, the court concluded that, despite CBN's status as a foreign state entitled to immunity, it was required to answer limited discovery because Plaintiff had raised sufficient evidence supporting Plaintiff's positions on ownership and use.[31]

---

[29] See Memorandum, Recommendation, and Order, Docket Entry No. 35, pp. pp. 23-28.

[30] Id. at p. 28.

[31] See id. at pp. 28-34.

8

The court limited discovery to ownership and use of the funds held by Chase on behalf of CBN, specifically allowing Plaintiff to request information and documentation regarding the source and disposition of the funds held by Chase on behalf of CBN for the years 2007 through 2009.[32] Because the court, in reliance on the parties' representations in their briefs, understood Chase to have only one account in CBN's name, the court limited discovery to "the account."[33]

On February 19, 2010, ten days after the court issued its memorandum, Plaintiff propounded discovery on CBN.[34] On April 28, 2010, Chase informed Plaintiff that it maintained "many accounts with a significant volume of transactions" and requested that the initial discovery relate only the account in which Chase retained the funds that were subject to the garnishment limit.[35] Plaintiff agreed to limit Chase's discovery responses to that account but requested basic information on the other accounts.[36] CBN objected to Plaintiff's request, and Plaintiff agreed to limit the scope of

---

[32] See id. at pp. 33-34. The order adopting the recommendation clarified that Plaintiff could seek discovery from both CBN and Chase. See Order dated Apr. 2, 2010, Docket Entry No. 44, pp. 1-2.

[33] See Memorandum, Recommendation, and Order, Docket Entry No. 35, pp. 33-34.

[34] See Plaintiff's Second Motion to Compel, Docket Entry No. 65, Ex. 1, Plaintiff's Request for Production and Interrogatories to CBN.

[35] See Plaintiff's Third Motion to Compel, Docket Entry No. 67, Ex. 2, E-mail from Truman Spring to William Gage dated Apr. 28, 2010.

[36] See id. at Ex. 2, E-mail from William Gage to Truman Spring dated Apr. 28, 2010.

its discovery requests to the restrained account only for the initial set of requests.[37] On May 26, 2010, Chase produced the relevant bank statements, and, on June 1, 2010, CBN provided bank ledgers for that one account.[38]

Plaintiff filed the pending Second Motion to Compel on June 4, 2010.[39] The court held a hearing on June 8, 2010, on other matters.[40] Plaintiff's motion to compel was a topic of discussion, but the court allowed CBN an opportunity to respond before issuing a ruling.[41] In the course of the discussion, CBN's counsel stated that he would need to obtain a declaration from his client in order to respond to the motion.[42] The court expressed concern that, in light of Nda's vague and unhelpful testimony in his first declaration, a second declaration would be unlikely to be sufficient.[43] In the court's view, the more prudent next step would be to test the declaration via deposition and, therefore, ordered Nda to be deposed on the condition that he was the appropriate

---

[37] See id. at Ex. 3, Letter from David Fromm to William Gage dated May 19, 2010; E-mail from William Gage to Truman Spring and David Fromm dated May 21, 2010.

[38] See Plaintiff's Second Motion to Compel, Docket Entry No. 65, Ex. 5, Bank Statements; Plaintiff's Third Motion to Compel, Docket Entry No. 67, p. 3.

[39] Docket Entry No. 65.

[40] See Minute Entry Order dated June 9, 2010, Docket Entry No. 66.

[41] See Audio Recording of Hearing dated June 8, 2010.

[42] See id.

[43] See id.

person to discuss the ownership and use of the funds.[44] CBN's counsel stated that he would need to verify that Nda was the appropriate person.[45] Plaintiff's attorney allowed that Plaintiff would be willing to depose Nda or whomever the appropriate person was but added that he sought the discovery requested in his second motion to compel before doing so.[46]

The court issued a Minute Entry Order intended to reflect the above exchange and the court's position that CBN was not to rely on a second declaration but, instead, was required to present a knowledgeable representative for deposition.[47] Unfortunately, the order was poorly phrased and stated, "In light of the inadequacy of the Nda Declaration concerning the nature and use of the account presently under discussion, any further evidence must be obtained through the adversary process by way of a deposition."[48] Chase read the order as confirmation that the court was limiting discovery to the restrained account.[49]

A week after the hearing, Plaintiff filed the pending third

---

[44]  See id.

[45]  See id.

[46]  See id.

[47]  See Minute Entry Order dated June 9, 2010, Docket Entry No. 66.

[48]  Id.

[49]  Chase's Response to Plaintiff's Third Motion to Compel, Docket Entry No. 72, p. 2.

motion to compel.[50] Chase and CBN responded to Plaintiff's arguments in both pending motions to compel.[51] The court held a hearing on July 14, 2010, and entertained the parties' arguments on Plaintiff's motions to compel and other issues.[52] This order addresses the two pending motions to compel.

## II. Motions to Compel

Both of Plaintiff's motions contain the same general request for information on the other accounts held by Chase in CBN's name. The only significant difference between the two motions consists of a set of objections to several specific responses by CBN. The court addresses these first.

Plaintiff requested "[a]ll authorizations related to the Account(s), including[,] without limitation, all power of attorney, deposit agreements and signature cards" and "[a]ll audit reports reflecting the source, ownership, or use of funds in the Account(s) generated since January 2007."[53] CBN responded that it was conducting a search for responsive documents and would produce them upon locating them.[54] Plaintiff objects to responses to two other

---

[50] See Plaintiff's Third Motion to Compel, Docket Entry No. 67.

[51] See Chase's Response to Plaintiff's Third Motion to Compel, Docket Entry No. 72; CBN's Response to Plaintiff's Second Motion to Compel and Third Motion to Compel, Docket Entry No. 73.

[52] See Minute Entry dated July 14, 2010, Docket Entry No. 85.

[53] Plaintiff's Second Motion to Compel, Docket Entry No. 65, Ex. 7, CBN's Response to the Request for Production Propounded by Plaintiff, p. 3, Reqs. 10, 11.

[54] See id. at p. 3, Resps. to Reqs. 10, 11.

requests in which CBN stated that it did not have any responsive documents in its possession.[55] Despite Plaintiff's distrust of the responses, the court must trust the representations of counsel and cannot force a party to turn over documents it cannot locate or does not have. Plaintiff's objections to CBN's responses to the requests for production are **OVERRULED**.

Plaintiff also objects to CBN's response to one of its interrogatories that requested the amount of deposits that "flowed from companies, partnerships, joint ventures, individuals or other entities[] into the Account(s)" and an explanation of if and how the funds were transferred to FGN.[56] CBN stated that no funds from the account were transferred to FGN.[57] Plaintiff requests that the court order CBN to respond to the interrogatory with respect to all accounts maintained at Chase. As explained below, the court agrees with Plaintiff that it is entitled to discovery regarding all accounts and, therefore, **SUSTAINS** Plaintiff's objection.

The court turns to the main focus of Plaintiff's motions to compel. The prior court orders have been interpreted to limit discovery to the one account on which Chase placed a freeze, and the parties agreed to begin discovery with only that account.

---

[55] See id. at pp. 2-3, Resps. to Reqs. 8, 13.

[56] Plaintiff's Second Motion to Compel, Docket Entry No. 65, Ex. 8, CBN's Response to the Request for Interrogatories Propounded by Plaintiff, p. 2, Interrog. 5.

[57] See id.

Based on the discovery results related to the frozen account, Plaintiff asks the court to expand the realm of discoverable material to include information and documentation regarding the ownership and use of all accounts held by Chase in CBN's name.

More specifically, Plaintiff argues that the produced documents from the restrained account illustrate that the account is not held by CBN for its own account but, rather, is used by FGN for many types of transactions. Plaintiff points to uses such as purchasing, inter alia, ammunition, construction supplies, ambulances, airplane parts, and airplane maintenance services.[58] Plaintiff asserts that these transactions appear to have no relation to central banking activities and some clearly were commercial in nature, a few of which were clearly paid in the United States. Plaintiff seeks discovery on the other accounts with the stated interest in verifying whether the funds have a commercial use within the United States.

Chase responds that it has complied with all court orders but will produce documents and information on all accounts if the court specifically orders it to do so. CBN, in addition to rehashing issues already decided by the court[59] and contending that the court

---

[58] See, e.g., Plaintiff's Second Motion to Compel, Docket Entry No. 65, Ex. 5, Bank Statements at CP000185, CP000249, CP000334, CP000541, CP000636, CP000639, CP000660, CP000676, CP000722, CP000888, CP000912, CP000937, CP001006, CP001007 CP001129.

[59] For example, CBN argues that Plaintiff does not have a judgment against CBN, that CBN is entitled to immunity, and that Plaintiff should be required to seek all discovery from FGN only. In the February memorandum, the

only has jurisdiction over the restrained funds, disagrees with Plaintiff that the transactions reveal anything other than that the funds in the restrained account were used for central banking activities. Apparently in an effort to explain how the purchase of ammunition, construction supplies, ambulances, airplane parts, airplane maintenance services, etc., should be viewed as central banking activities, CBN states:

> Naira, the official currency of Nigeria, is not traded on the international market or a convertible currency. As a result, when the FRN[60] needs to make a payment in foreign currency, it submits the amount of the payment in Naira to the CBN. The CBN then uses its foreign reserves to make these payments including funds in the subject account.[61]

CBN also contends that the "vast majority of the transactions are used for purely governmental activities," such as payments to embassies and consulates around the world, membership dues for international organizations, and aid to foreign countries.[62]

The court finds the arguments of Chase and CBN unconvincing and, frankly, somewhat incredible. Be that as it may, the court

---

court methodically proceeded through a complex analysis to reach the conclusion that Plaintiff may seek limited discovery from CBN. <u>See</u> Memorandum, Recommendation, and Order, Docket Entry No. 35, pp. 11-34. Thus, the court has already considered and rejected CBN's argument.

[60] The subject judgment is against the Federal Government of Nigeria. <u>See</u> Plaintiff's Opposition to CBN's Motion to Vacate Second Writ of Garnishment, Docket Entry No. 18, Ex. 1, Final Judgment dated June 16, 2009. Here, CBN refers to the country itself, FRN or the Federal Republic of Nigeria. The discrepancy does not appear to be material in deciding this case.

[61] CBN's Response to Plaintiff's Second Motion to Compel and Third Motion to Compel, Docket Entry No. 73, p. 5.

[62] <u>Id.</u>

acknowledges language in its orders that either refers specifically to only one account or lends itself to that interpretation. Of course, as noted above, the court was unaware of the existence of multiple accounts until Plaintiff informed the court in June of this year.

The court need not dwell on these issues and, thus, turns to the evidentiary record as it now stands. The bank statements, which Plaintiff obtained through discovery, show that the funds have been used for commercial purposes and, in some instances, paid within the United States. The court does not agree with CBN that paying commercial bills at FGN's direction takes on the immunity of central banking activity simply because FGN deposits money in one currency and CBN makes payments of FGN's monies, on FGN's behalf, in another currency. Rather, the bank statements suggest that the frozen account contains funds belonging to FGN that are used for commercial, nonbanking activities in the United States.

Even so, the court finds that the factual record is not sufficient for the court to rule on immunity from attachment and that further, limited discovery against CBN and Chase is warranted. Cf. <u>First City, Tex.--Houston, N.A. v. Rafidain Bank</u>, 150 F.3d 172, 176-77 (2$^d$ Cir. 1998)(relying in part on law from the Fifth Circuit Court of Appeals, allowing limited discovery against a foreign central bank, and indicating that additional discovery against the central bank would be appropriate if necessary to resolve the

jurisdictional question).

Despite CBN's hyperbole to the contrary, to allow this discovery will not eviscerate foreign sovereign immunity. Discovery requests must continue to be narrowly tailored to address the specific issues necessary for the court to determine whether immunity precludes garnishment. If, at any point, immunity from attachment becomes clear, the court upon motion will order that discovery close.

To be perfectly clear, Chase must only provide information and documentation and must not freeze or restrain any additional funds. As long as Chase continues to retain funds in an amount equal to $15,170,578 pending the court's decision as ordered, Chase may use its discretion in determining which account contains the restrained funds. The court will determine whether the funds on deposit are attachable based on the totality of activity in all of the accounts, without regard to the particular account in which the frozen funds reside.

It is, therefore, **ORDERED** that

Chase and CBN have thirty days to produce to Plaintiff all signature cards or similar documents to identify all person(s) authorized to make withdrawals, all depository agreements or contractual agreements, all documents authorizing or requesting deposit or withdrawal of funds, and all transaction records, bank statements, and accounting ledgers for all accounts maintained by

17

CBN at Chase for the period beginning January 1, 2007, and ending December 31, 2009.

It is further **ORDERED** that

CBN respond to all interrogatories, requests for admission, and requests for production served by Plaintiff on or about February 19, 2010, with respect to all CBN accounts maintained at Chase.

**SIGNED** in Houston, Texas, this 19th day of July, 2010.

_____
Nancy K. Johnson
United States Magistrate Judge