IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SOLGAS ENERGY LTD. | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 09-368 |
| | § | |
| THE FEDERAL GOVERNMENT OF NIGERIA | § | MISCELLANEOUS PROCEEDING |
| | § | |
| *Defendants*. | § | |

**SOLGAS ENERGY LTD.'S RESPONSE
TO THE CENTRAL BANK OF NIGERIA'S OBJECTION TO
ORDER DATED JULY 19, 2010 (Dkt. 97)**

Solgas Energy Ltd. ("Solgas") files this Response to the Central Bank of Nigeria's ("CBN") Objection to the Order dated July 19, 2010 (Dkt. 97) as follows:

**Summary of Response**

1. There is no merit to CBN's objections, and the July 19, 2010 Order should be affirmed in all respects.

**Summary of Procedural Background**

2. Following the service of the Second Writ of Garnishment, Chase filed an Answer in which it notified the Court that it had frozen funds up to the amount of the writ. (Dkt. 13.) Chase did not, however, fully comply with the writ, which ordered Chase to identify all the funds that it held on deposit for CBN. (Dkt. 6, Second Writ of Garnishment.)

3. In an ordinary garnishment, Chase's answer might well have been sufficient. However, as the Court has recognized, in a case arising under the Foreign Sovereign Immunities Act, as this case does, it is not the amount of the funds garnished that controls, but whether those funds are owned by the Federal Government of Nigeria and whether those specific funds are used for commercial purposes in the United States. Therefore, the nature of the account selected is key.

4. Texas law allows the Court to determine which funds being held by a garnishee are actually subject to garnishment. *See Bank One v. Sunbelt Sav.*, 824 S.W.2d 557, 558 (Tex. 1992). Chase did not inform either the Court or Solgas that CBN maintained 44 separate accounts; instead Chase simply froze part of a randomly chosen account up to the amount indicated in the writ of garnishment.

5. It was not until the Court ordered further discovery as to the randomly frozen account that Solgas learned that CBN maintained "multiple" accounts with Chase. It was not until CBN filed its Objections to the July 19, 2010 Order that Solgas learned that CBN actually maintains 44 distinct accounts at Chase. (Dkt. 97.) To date, no information whatsoever about the 43 additional accounts has been revealed to Solgas or to the Court.

6. As the Court has noted, the evidence obtained so far strongly suggests that, CBN's protestations to the contrary, that funds on deposit at Chase are actually owned by FGN and are used for commercial purposes in the United States. (Dkt. 91 at 16.) However, because the protections afforded a sovereign under the FSIA are significant, additional

discovery is needed to confirm that the garnished accounts do in fact contain FGN funds and that those funds are being used for commercial purposes in the United States. (Dkt. 91 at 8.) The additional discovery sought by Solgas and ordered by the Court simply allows the Court to afford CBN and FGN the protections to which they are entitled under the FSIA, and to insure that the funds garnished are actually subject to execution under the FSIA. If, as CBN has repeatedly argued, the funds on deposit at Chase are held by CBN for its own account, then compliance with the Court's discovery order will allow the Court to reach that conclusion and release the garnishment.

7. CBN repeatedly suggests that the only funds subject to garnishment, and thus subject to the district court's jurisdiction, are funds in the account randomly frozen by Chase. This is not the case. The Second Writ of Garnishment covers *all* accounts at Chase in the name of CBN, FGN and any other entity named in the writ. (Dkt. 6.) It would be unusual, to say the least, if a disinterested garnishee, such as Chase, could so effectively determine the jurisdiction of a trial court. Clearly, this is not the law. The trial court has in rem jurisdiction over all funds held in the name of CBN or FGN on deposit at Chase, and thus has jurisdiction to order discovery as to any Chase account held by CBN or FGN.

## Argument and Analysis

**I.   The Order correctly determined that the Court has in rem jurisdiction over funds held by Chase, because the Court has personal jurisdiction over Chase.**

    **A.   Texas law gives the Court jurisdiction over all funds held by Chase.**

    8.    Texas law is clear. "[I]f the garnishee [Chase] be found in that state and process be personally served upon him therein, we think the court thereby acquires jurisdiction over him, and can garnishee the debt due from him to the debtor complained of, and condemn it, provided the garnishee [Chase] could himself be sued by his creditor in that state." *Missouri, K. & T. Ry. Co. of Texas v. Swartz*, 53 Tex. Civ. App. 389, 393, 115 S.W. 275, 277 (Tex. Civ. App. 1908, no writ), *citing Harris v. Balk*, 198 U. S. 215 (1905). *See also Koehler v. Bank of Bermuda, Ltd.*, 911 N.E.2d 825, 831, 12 N.Y.3d 533, 542 (N.Y. 2009) (a federal trial court could order a bank over which it had personal jurisdiction to deliver stock certificates to a judgment creditor that were kept at a subsidiary bank in Bermuda); *Af-Cap, Inc,. v. Republic of Congo*, Nos. A·01·CA·10055, A·01-CA·321·SS, 2005 WL 6128154 *3 (W.D. Tex. Feb. 4, 2006), *rev'd in part, vacated in part and remanded on other grounds*, 462 F.3d 417 (5th Cir. 2006.) ("the test for in rem jurisdiction over a garnishee's obligations is satisfied so long as the court has personal jurisdiction over the garnishee.")

9. "Debt, for the purposes of garnishment, has its situs wherever the garnishee [Chase] may be found." *T. & H. Smith & Co. v. Taber*, 16 Tex. Civ. App. 154, 40 S.W. 156 (1897); *see also* 17 TEX. JUR. 3D CREDITORS' RIGHTS AND REMEDIES § 430.

10. The July 19 Order correctly held that the Court has in rem jurisdiction over funds held by Chase, an entity over which the Court has unquestioned personal jurisdiction.

**B.  The Court has jurisdiction to order discovery regarding all CBN accounts at Chase.**

11. CBN argues that the Court lacks jurisdiction to order discovery about anything other than the account in which the "garnished funds" are located. (Dkt. 97 at 6.) CBN misapprehends the garnishment process. The Second Writ of Garnishment covers *all* funds on deposit at Chase which are titled in the name of CBN, FGN or any other party named in the Second Writ. (Dkt. 6.) Contrary to CBN's arguments, the account randomly chosen to be sequestered by Chase is only one of apparently 44 accounts over which the Court has obtained jurisdiction by operation of the Second Writ.

12. A writ of garnishment is directed to a garnishee, in this case Chase. It is not directed to a specific account. Instead, the garnishee is required to identify for the court what amounts it owes the debtor so that the court can determine whether the garnishment is proper. Neither the nominal owner of the funds nor the garnishee has the right to determine whether the garnishment is proper, or which of multiple accounts contains funds which are properly subject to garnishment. That right vests solely with the court. (Dkt. 91 at 5.)

13. Where, as here, the titular owner of the funds maintains multiple (*i.e.*, 44) accounts, the only way a court can determine which, if any, funds may be executed upon, is to look at all of the accounts.

14. Because the Second Writ covers *all* accounts at Chase in the name of FGN or CBN or any other agency or instrumentality of FGN, the Court has not only the absolute right, but also the obligation, to insure that Solgas executes upon funds which are subject to execution under 28 U.S.C. § 1610(a)(1).

15. Having established that the Court has in rem jurisdiction over all funds covered by the Second Writ of Garnishment, that is, all funds held by Chase in the name of CBN, FGN or any other party named in the writ, the Court has jurisdiction to order discovery regarding the ownership and use of all funds held by Chase in the name of CBN, FGN or any other party named in the writ.

16. CBN's reliance on *Flatow v. Islamic Republic of Iran*, 305 F.3d 1249 (D.D.C. 2002) is misplaced. In the first instance, the underlying facts in *Flatow* differ so significantly from the facts before this Court as to make the District of Columbia's jurisdictional analysis totally inapposite. In *Flatow*, the plaintiff, who had obtained a $225 million judgment against the Republic of Iran for acts of state-sponsored terrorism, sought to the collect his judgment in two separate ways. The first was by applying for funds under the Victims Protection Act. Flatow accepted a payment of $26 million from the U.S. Treasury, representing funds set aside by Congress to compensate victims of terrorist acts. As a

condition of acceptance of the funds, Flatow was required to relinquish all rights to execute against property or attach funds held by the United States as custodian for Iran. Nonetheless, Flatow also attempted to execute against three parcels of Iranian diplomatic property that were in the custody of the State Department.

17. The jurisdictional question involving the United States turned on whether or not the United States was responsible for paying post-judgment interest. In *Flatow*, the United States was not a defendant in the tort action against Iran. The United States was not served with a subpoena. No demand on the United States was ever made. Neither was United States added as a party either through joinder or intervention.[1] *Flatow*, 305 F.3d at 1252. Accordingly, the Court had no jurisdiction over the United States so as to require it to pay U.S. Treasury funds to Plaintiff. By contrast, Solgas does not seek to execute against funds owned by CBN. Rather, Solgas seeks to execute against FGN funds being held by CBN at Chase.

18. What CBN conveniently neglects to point out is *Flatow*'s discussion regarding a document subpoena served on the United States Treasury Department, which is relevant to the issues before the Court, and confirms the appropriateness of the July 19 Order. *Flatow*, 305 F.3d at 1253.

---

[1] By contrast, CBN has intervened in this proceeding. (Dkt. 9.)

19. The Treasury Department initially objected that the subpoena was overly broad and unduly burdensome. The trial court initially overruled these objections and ordered the Treasury Department to comply with the subpoena. Later, the trial court modified the subpoena and narrowed it to comply with the Victims Protection Act. This order was upheld by the District of Columbia Circuit. *Flatow*, 305 F.3d at 1253.

20. In other words, a sovereign, such as the Treasury Department or CBN, can be compelled to comply with discovery requests, so long as those requests are narrowly tailored and in compliance with the relevant statutes.

21. Second, general jurisdiction over CBN is controlled by the language of the FSIA, not by the discussion in *Flatow* about general jurisdiction over the United States. Jurisdiction over a foreign sovereign, or an agency or instrumentality of a sovereign, is controlled solely by the FSIA. The FSIA specifically addresses the extent of the liability of a foreign state: where the state is not entitled to immunity, "the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances." 28 U.S..C. § 1606. In short, unless CBN can establish a specific right to sovereign immunity, it is subject to liability, and by extension, discovery, in the same manner and to the same extent as a private individual would be under similar circumstances.

22. CBN has chosen to maintain 44 separate accounts with Chase Bank in the United States. This commercial relationship with a U.S. bank subjects CBN to jurisdiction

under the FSIA. 28 U.S.C. § 1605(a)(2) (action against CBN is based on a commercial activity carried on in the United States).

23. Specifically, this means the district court has jurisdiction to order CBN to produce its account ledgers for all 44 accounts.

### C. Traditional notions of fair play and substantial justice are incorporated into the FSIA, and no further analysis is warranted.

24. A foreign state, such as Nigeria and its agencies and instrumentalities, is not a "person" protected by the Fifth Amendment, and thus minimum contacts analysis is not required to exercise personal jurisdiction over Nigeria or CBN. *I.T. Consultants, Inc. v. Republic of Pakistan*, 351 F.3d 1184, 1191 (D.C.Cir. 2003).

25. The legislative history of the FSIA makes it clear that due process notions of minimal contacts are incorporated into its provisions. H.Rep.No.94–1487, 94th Cong., 2d Sess. 13 (1976), U.S.Code Cong. & Admin.News, 1976, pp. 6604, 6612.; *Maritime Ventures Intern., Inc. v. Caribbean Trading & Fidelity, Ltd.*, 689 F.Supp. 1340, 1350 (S.D.N.Y. 1988); *Waukesha Engine Division, Dresser Americas, Inc. v. Banco Nacional De Fomento Cooperativo*, 485 F.Supp. 490, 493 (E.D. Wis. 1980).

26. CBN has voluntarily appeared in these proceedings to defend its purported interest in the garnished funds. In fact, CBN has asked the Court to determine its ownership of the garnished funds. It cannot also be heard to complain when the Court actually requires proof of CBN's position.

27. The production of documents and the answering of interrogatories upon the order of a federal district court in Houston is no more burdensome than would be producing the same documents and answering the same interrogatories in response to an order from a federal district court in Manhattan,[2] which CBN suggests would be acceptable. (Dkt. 97 at 7.)

28. CBN has not been faced with an "untenable dilemma." (Dkt. 97 at 8.) If, as CBN has continuously protested, the garnished funds are its own funds, held for its own account, then cooperation in discovery will allow the Court to make that determination and release the garnishment. If, on the other hand, as the documents already produced suggest, the funds are actually FGN's used for commercial purposes in the United States, then cooperation in discovery will have the effect, undesired by CBN, of permitting the Court quickly to rule in Solgas's favor, and enter judgment on the writ. CBN's motivation for resisting discovery is clear - CBN knows one or more of the accounts will be subject to execution.

29. CBN has chosen to maintain a banking relationship with Chase, which has a significant presence in Texas. Not only does CBN have a relationship with Chase, it has a

---

[2]CBN appears to raise a forum non conveniens argument, or perhaps an improper venue argument, in its statement that this case "should be in Nigeria, London (place of arbitration) or New York." (Dkt. 97 at 7.) Both forum and venue arguments are waived if not made in a timely fashion. *See* FED.R.CIV.P. 12 (b)(3) & (h)(1). In addition to having no substantive merit, as CBN has not previously made these arguments, they have been waived.

significant relationship with Chase, with daily balances in only one of the 44 CBN accounts averaging approximately $50 million.

30. CBN is not seriously complaining about due process. CBN is complaining because it does not want its U.S. accounts exposed to the light of day and the scrutiny of a United States court. This is not a due process issue. CBN's constitutional arguments should be rejected.

## II. The Order's limitation on discovery is reasonable, and narrowly tailored to address only the issues before the Court.

### A. The necessity for broader based discovery is caused by CBN's efforts to conceal the true nature of funds on deposit at Chase.

31. As the Court has previously held, the sworn declaration of CBN's sole witness is deliberately vague, and significantly contradicted by the written evidence. (*See* Dkt. 35 at 4–5, 26; Dkt. 91 at 4; Tr. July 14, 2010 at 14.)

32. CBN's explanations for the written evidence contained in its bank ledgers and bank statements have been "unconvincing and, frankly, somewhat incredible." (Dkt. 91 at 15.)

33. It was not until CBN filed its Objections to the Magistrate Judge's Order of July 19, 2010 that CBN admitted that it actually maintains 44 separate accounts at Chase. (Dkt. 97.) CBN has assiduously refused to answer questions about the nature of the accounts on deposit at Chase, and thus has, by its own recalcitrance, created the need for discovery regarding all of its accounts at Chase.

**B.     Additional discovery is both necessary and appropriate to protect the interests of FGN and Solgas in a rapid and speedy resolution of this dispute.**

34.     First, the FSIA demands that courts give particular scrutiny to efforts to execute against assets of foreign sovereigns. It is important that the Court reach the correct determination as to ownership and use.

35.     Second, the bank statements and ledgers produced by Chase and CBN indicate that the restrained account, in addition to being used by FGN for commercial purposes in the United States, is also used for uniquely sovereign purposes, including funding diplomatic salaries.[3] However, the Hart Report, which reports on an extensive audit of CBN accounts, including those maintained at Chase, indicates that FGN maintains a "cash call account" at Chase, used to make payments to joint venture partners in the oil and gas sector. (Dkt. 18-10.) The Court has already correctly determined that making joint venture payments is a commercial activity for purposes of the FSIA. (Dkt 35 at 27–28.) Now that CBN has finally revealed to the Court the true extent of its accounts at Chase, it seems apparent that at least one of the other 43 accounts is the one identified in the Hart Report and used for joint venture payments in the United States.

---

[3]Of course, the payment of diplomatic salaries and emoluments is not a *central banking* function relating to monetary policy or maintenance of foreign reserves, but is a uniquely *sovereign* function, thus contradicting CBN's repeated protestations that funds on deposit at Chase are held for CBN's own account.

36. While Solgas believes that the evidence submitted to date demonstrates that funds held by Chase are owned by FGN and used for commercial purposes in the United States, the frozen account is clearly a mixed account, used for a variety of purposes. Rather than engage in a protracted debate as to the propriety of executing against a mixed account, judicial economy supports additional limited discovery before a final determination is made.

### III. Contrary to CBN's hyperbole, the July 19, 2010 order does not eviscerate sovereign immunity.

37. The Order of July 19, 2010 is reasonable and limits discovery to use and ownership of funds on deposit at Chase. The fact that CBN maintains 44 separate accounts, while impacting the size of the document production, has no bearing on the reasonableness of the Order.

38. CBN persists in its argument that the only relevant issue is whether the funds randomly chosen by Chase in response to the Second Writ of Garnishment are immune from execution. (Dkt. 97 at 4-5.) This is not the case. The Court has jurisdiction over all funds subject to the Writ, that is, all funds maintained on deposit at Chase by CBN or FGN, or any other party named in the writ.

### IV. It is disingenuous for CBN to argue that Solgas will obtain useful information from a motion to compel discovery from FGN itself.

39. CBN suggests that Solgas should waste additional time and resources in attempting to obtain discovery from FGN. (Dkt. 97 at 5–6.) If CBN believes that such

efforts would be useful, it would perhaps be more productive for CBN to raise the issue with FGN, its sovereign and the ultimate parent of CBN.

40. Solgas has served FGN with every pleading it has filed in this case, in accordance with the terms of its contract with FGN. Despite personal service by Federal Express, FGN has failed to appear in this matter or respond to discovery. Most recently, FGN has either refused to accept service of pleadings, or has returned them to Solgas's counsel. FGN clearly has no intention of participating in discovery, and it would be a waste of time and judicial resources to pursue a motion to compel against FGN.

41. Perhaps most importantly, however, the CBN ledgers make it quite clear what assets the FGN maintains in the United States. CBN's transparent efforts to deflect attention from its own failures to comply with the Court's orders should be ignored.

## Conclusion

42. CBN's Objections to the July 19, 2010 Order should be overruled.

Wherefore Solgas Energy Ltd. asks that The Central Bank of Nigeria's Objections to the July 19, 2010 Order be OVERRULED and for all other relief to which it may be entitled.

Respectfully submitted,

By:   /s/ William A. Gage, Jr.
      William A. Gage, Jr.
      Texas Bar No. 07566580

ATTORNEY-IN-CHARGE FOR SOLGAS ENERGY LTD.

OF COUNSEL:

James Keenan
Texas Bar No. 11167850
E.F. Mano DeAyala
Texas Bar No. 00783946
Ann E. Webb
Texas Bar Number 2101766

BUCK KEENAN LLP
700 Louisiana, Suite 5100
Houston, Texas 77002
(713) 225-4500
(713) 225-3719 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that on August 9, 2010, a true and correct copy of the above and foregoing instrument has been forwarded as follows:

| | |
|---|---|
| David H. Fromm<br>Brown Gavalas & Fromm, LLP<br>355 Lexington Avenue<br>New York, New York 10017<br>*Via ECF System* | Peter A. McLauchlan<br>Gardere Wynne Sewell LLP<br>1000 Louisiana, Suite 3400<br>Houston, Texas  77002<br>*Via ECF System* |
| Truman E. Spring<br>1412 Main Street<br>Suite 400<br>Dallas, Texas 75202<br>*Via ECF System* | The Federal Government of Nigeria,<br>by and through The Honourable Minister,<br>Federal Ministry of Power & Steel,<br> Federal Secretariat,<br>Abuja, Nigeria<br>*Via First Class Mail* |

/s/ William A. Gage, Jr.
William A. Gage, Jr.